<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                            :
INSURANCE COMPANY OF THE                    :
STATE OF PENNSYLVANIA,                       :
          Plaintiff,                        :      Civ. No. 04-0292 (GEB)
                                            :
          v.                                :
                                            :
MSJ CONSTRUCTION, LLC,                      :      **MEMORANDUM OPINION**
*et al.*                                    :
          Defendants.                       :
_____:

**<u>BROWN, District Judge</u>**

This matter comes before the Court upon Plaintiff Insurance Company of the State of

Pennsylvania's ("ISOP") motion and Defendant Designline Construction Services, Inc.'s ("DCS")

cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  The Court

decided the motions based on the parties' written submissions and without oral argument pursuant

to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the Court will grant-in-part

and deny-in-part both motions.

## I.       <u>BACKGROUND</u>

ISOP brought suit against Defendants DCS, MSJ Construction, LLC ("MSJ Construction"),

MSJ Construction t/a M. Spike Jones Construction, Michael Jones, a.k.a. M. Spike Jones, a.k.a.

Spike Jones, and Galaxy Construction of NJ, Inc. ("Galaxy").  ISOP sought, *inter alia*,

indemnification and reimbursement for losses resulting from certain Performance and Payment

Bonds which ISOP claims were issued on behalf of Defendants.

ISOP alleges that on January 26, 1998, Defendants MSJ Construction, MSJ Construction t/a M. Spike Jones Construction, and Michael Jones executed an Indemnity Agreement whereby these Defendants would "save harmless and indemnify ISOP for any and all liability, loss, damages, costs, counsel and attorney fees incurred by ISOP by reason or in consequence of having issued any bonds or suretyship instruments on behalf of ISOP" in exchange for ISOP furnishing bonds on their behalf, and on behalf of their related entities and affiliated corporations including DCS and Galaxy. (Compl. ¶ 9). This particular agreement identifies MSJ Construction and Michael Jones as Principal/Indemnitors. The agreement was signed by Michael Jones, individually and as President of MSJ Construction. (Pl.'s Statement of Unconstested Facts in Supp. of Mot. for Summ. J. ("Pl.'s Statement"), Ex. A).

ISOP claims that a second Indemnity Agreement was executed on November 19, 1999, by MSJ Construction, Michael Jones and DCS. ISOP asserts that this Indemnity Agreement likewise holds ISOP harmless from any losses resulting from the issuance of bonds. (Compl. ¶ 10). This agreement identifies MSJ Construction and DCS as Contractors, and Michael Jones as Indemnitor. (Pl.'s Statement, Ex. B).

ISOP's indemnification claims relate to six specific Performance and Payment Bonds. The first bond, Bond No. PA6075477, was issued on behalf of MSJ Construction for the Lester Glen Buick Dealership project ("Lester Glen Project"). (Pl.'s Statement, Ex. D). The remaining five bonds were issued on behalf of DCS for various projects. (*Id.*). Subsequent to the issuance of these bonds, demands were made by bond obligees based on Defendants' alleged failure to perform or pay as their contracts required. ISOP alleges that it incurred a total amount of $332,085.66 in "losses, expenses, and attorneys' fees, paid claims, and set reserves as a consequence of having issued the

bonds." (Compl. ¶ 15).  ISOP asserts that by virtue of the two Indemnity Agreements, ISOP is entitled to full indemnification and reimbursement from all Defendants.

Subsequent to the filing of the Complaint, Defendants MSJ Construction, MSJ Construction t/a M. Spike Jones Construction, Michael Jones, and Galaxy encountered financial hardship which precluded them from adequately defending this lawsuit.  Michael M. Dicicco ("Dicicco") of the law firm of Bathgate, Wegener and Wolf, P.C., was previously retained as counsel for these Defendants. On February 17, 2005, however, Dicicco moved to withdraw as counsel after Defendants advised him that they were unable to pay legal fees.  On March 21, 2005, a teleconference was held by Magistrate Judge John Hughes. During this time, Dicicco represented to the Court that these Defendants filed for bankruptcy proceedings.  (*See* Judge Hughes Order dated March 21, 2005). Judge Hughes granted Dicicco's motion to withdraw as counsel.  Because the instant motions for summary judgment against these Defendants were pending at that time, Judge Hughes further ordered that these summary judgment motions as applied to these Defendants were to be automatically stayed.  (*Id.*).  In light of Judge Hughes' Order, Counts II and VII of the Complaint – Counts which involve claims affecting the bankruptcy Defendants only – are stayed.  Thus, the instant summary judgment motions only pertain to the remaining Counts in the Complaint as they relate to ISOP's indemnification and exoneration claims against DCS.

## II.    DISCUSSION

### A.    Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV.

P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255-56.

Under the rule, a movant must be awarded summary judgment on all properly supported

issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. *See Celotex,* 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," *id.* at 322, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Anderson*, 477 U.S. at 249; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non- moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), *cert. denied*, 507 U.S. 912 (1993).

**B.**     **The Lester Glen Project Bond – Bond No. PA6075477**

ISOP asserts that DCS is liable for indemnification and exoneration for the losses sustained

as a result of the issuance of the six Performance of Payment Bonds.  DCS contends that the

agreements at issue are not binding upon DCS.  As a preliminary matter, the Court notes that the first

agreement – the January 26, 1998 Indemnity Agreement – does not purport to bind DCS.  The parties

to this agreement included ISOP, MSJ Construction and Michael Jones.  The Agreement identifies

MSJ Construction and Michael Jones as the Principal/Indemnitor. (Pl.'s Statement, Ex. A).  Because

DCS was not party to the agreement, the only agreement applicable in this matter is the November

19, 1999 Indemnity Agreement ("the 11/19 Agreement") – an agreement to which DCS appears to

be a party.

In New Jersey, "indemnity agreements are interpreted in accordance with the rules governing

the construction of contracts generally."  *Vitty v. D.C.P. Corp.*, 633 A.2d 1040, 1042 (N.J. Super.

Ct. App. Div. 1993).  On its face, the 11/19 Agreement appears to be an agreement between ISOP,

MSJ Construction, and DCS.  ISOP argues that the agreement requires DCS to indemnify and

reimburse ISOP for any losses, attorneys' fees and expenses of any kind resulting from the issuance

of the surety bonds, including the Lester Glen Project Bond that was issued on behalf of MSJ

Construction.  DCS contends that it is not bound to the terms of the Indemnity Agreement because

Michael Jones, who signed the agreement on behalf of DCS as its President, did not have the

authority to bind DCS to such obligations.  According to DCS, Michael Jones never held the position

of President, and even if he did, the Board of Directors of DCS never authorized him to execute such

an agreement.  In response, ISOP asserts that Michael Jones had actual or, in the alternative, apparent

authority to bind DCS. ISOP points to the "Corporate Acknowledgment" and the "Resolution of the

Board of Directors Authorizing Corporate Indemnity or Subordination" ("the Corporate Resolution")

attached to the 11/19 Agreement as evidence of Michael Jones' authority to bind DCS.  (Pl.'s

Statement, Ex. B at 9-10).

Based on a plain reading of the 11/19 Agreement, however, the Court need not reach the

disputed issue regarding Michael Jones' actual or apparent authority to resolve the issue of DCS's

liability on the Lester Glen Project Bond.  Assuming *arguendo*, Michael Jones was granted authority

to bind DCS as President of DCS, such authority was clearly limited by the Corporate Resolution.

Specifically, the Corporate Resolution provides that:

> [DCS] has applied or will apply to [ISOP] for certain bonds or
> undertakings of whatever kind or nature; and . . . [ISOP] is willing to
> execute such bonds or undertakings as Surety upon the written
> Indemnity of this Corporation and/or written subordination of moneys
> owed to this Corporation.

(*Id.* at 10).  DCS argues that the plain language of the Corporate Resolution indicates that the

Indemnity Agreement only applies to future bonds executed by ISOP, and does not apply

retroactively to pre-existing bonds.  ISOP does not oppose this argument.  This Court agrees with

DCS that if in fact Michael Jones had authority to execute the 11/19 Agreement, the Corporate

Resolution clearly limited his authority to future bonds only, as opposed to pre-existing bonds.

Consequently, the Lester Glen Project Bond, which was issued by ISOP on August 17, 1999, before

the date of the 11/19 Agreement, falls outside the scope of Michael Jones' purported authority.

Thus, the Court finds that the 11/19 Agreement does not bind DCS to indemnification

obligations relating to the Lester Glen Project Bond.  Accordingly, summary judgment is granted in

favor of DCS as to this issue.

C.      **The Five Remaining Bonds – PA0505172, PA0505176, PA0505183, PA0505202, PA0583007**

DCS acknowledges that is it obligated to indemnify ISOP for losses relating to bonds that

were issued on its behalf.  (DCS's Opp'n & Br. at 5).  Specifically, DCS states:

> At common law, a bonding company that pays claims or incurs
> expenses in connection with a payment or performance bond is
> entitled to indemnity from the construction company on whose behalf
> the bond was issued.  It is not uncommon for construction companies
> to sign express indemnity agreements acknowledging and expanding
> upon this common law obligation.  Here, ISOP seeks to enforce such
> indemnity obligations against DCS on its bonds and against [MSJ
> Construction] on its bonds.  Neither DCS nor MSJ contests liability
> in this respect; the only dispute is as to the quantum of recovery.

(*Id.*).  It is undisputed that the five remaining bonds were issued on behalf of DCS for various

projects.   (Pl.'s Statement, ¶¶ 4-5 & Ex. D; DCS's Resp. to Pl.'s Statement & DCS's Counter-

Statement of Uncontested Facts, ¶¶ 4-5).  Consequently, DCS is obligated to indemnify ISOP as to

the five remaining bonds.

However, the extent of DCS's obligation is disputed.  Although DCS appears to acknowledge

its indemnification obligations, it has not identified under what agreement it owes these obligations.

ISOP, however, identifies the 11/19 Agreement.  The Court finds a genuine issue of material fact as

to whether this particular agreement binds DCS.  ISOP proffered evidence that may establish

Michael Jones' actual or apparent authority by producing the 11/19 Agreement which bears the

signature of Michael Jones as President of DCS.  In response, DCS submitted evidence indicating

that Michael Jones never served as President of DCS, nor did he ever have the authority to bind the

company by executing agreements such as the Indemnity Agreement.  (*See* Slabon Cert., ¶¶ 3-5).

Thus, whether Michael Jones had authority, either actual or apparent, to execute the 11/19

Agreement on behalf of DCS, and thereby bind DCS to the indemnification obligations set forth in that particular agreement, is an issue that must be resolved by a factfinder at trial. Consequently, without any evidence of any other agreement, the Court at this time cannot resolve what DCS's obligation is to ISOP.

ISOP advances the alternative argument that even if Michael Jones was not authorized to bind DCS to the 11/19 Agreement, DCS nonetheless ratified the agreement and is therefore bound by its terms. New Jersey law defines ratification as "the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Martin Glennon, Inc. v. First Fidelity Bank, N.A.*, 652 A.2d 199, 205 (N.J. Super. Ct. App. Div. 1995) (quoting *Thermo Contracting Corp. v. Bank of N.J.*, 354 A.2d 291 (1976)). Ratification may not be based on mere negligence, but must result from knowledge of all material facts and an intent to ratify. *Id.* Here, ISOP relies on a Letter Agreement by Frank T. Araps ("Araps"), an attorney of DCS in connection with the Cracker Barrel Project which purports to expressly ratify the 11/19 Agreement. (Pl.'s Counter-Statement, Ex. E). However, this Letter Agreement is insufficient for the Court to grant summary judgment as to the ratification issue. First, there is a question as to whether the attorney, who was retained to represent DCS on an entirely separate matter, had the authority to enter into this agreement. (*See* Slabon Sur-Reply Cert., ¶ 10). Second, as the Letter Agreement merely refers to "the General Indemnity Agreement," it is unclear whether this letter actually refers to the 11/19 Agreement. Consequently, at this time the Letter Agreement by itself does not extinguish any issue of material fact as to whether DCS ratified the 11/19 Agreement. The Court will therefore deny summary judgment as to ISOP's ratification argument.

ISOP also advances the argument that DCS is estopped from asserting that the 11/19 Agreement is non-binding.  Citing *Global American Insurance Managers v. Perera Co., Inc.*, 349 A.2d 108, 116-17 (N.J. Ch. 1975), ISOP notes that one element that must be proven to establish equitable estoppel is that the party estopped must have knowledge of the material facts, or "at least the circumstances must be such that knowledge of them is necessarily imputed to him." *Id.* at 117. For the reasons discussed above, ISOP fails to establish that DCS ever had knowledge of material facts with regard to the 11/19 Agreement.  Consequently, ISOP's motion is denied as to the estoppel issue.

Accordingly, the Court grants summary judgment that DCS has an obligation to indemnify ISOP for the five Payment and Performance Bonds that were issued on its behalf, but denies summary judgment as to the extent of DCS's obligation.

**III.      CONCLUSION**

For the foregoing reasons, both ISOP's motion and DCS's cross-motion for summary judgment is denied-in-part and granted-in-part.  An appropriate form of order accompanies this Memorandum Opinion.


Dated:          July 28, 2005


                                                   s/ Garrett E. Brown, Jr.
                                        GARRETT E. BROWN, JR., U.S.D.J.